UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DESERT VALLEY PAINTING & DRYWALL, INC.,<br><br>    Plaintiff & Counterclaim Defendant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendants & Counterclaim Plaintiff. | Case No.  2:10-cv-00490-KJD-GWF<br><br>**ORDER**<br><br>**Motion for Protective Order - #34** |
| DENKO DRYWALL COMPANY,<br><br>    Plaintiff & Counterclaim Defendant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendants & Counterclaim Plaintiff. | Case No.  2:10-cv-00498-LRH-GWF<br><br>**ORDER**<br><br>**Motion for Protective Order - #32** |

This matter is before the Court in Case No. 2:10-cv-490-KJD-GWF on Defendant/Counterclaimant United States' Motion for Protective Order (#34), filed on September 22, 2011; Plaintiff Desert Valley Painting & Drywall, Inc.'s Response to the Motion for Protective Order (#35), filed on October 6, 2011; and the United States' Reply in Support of its Motion for Protective Order (#37), filed on October 17, 2011.  This matter is also before the Court in Case No. 2:10-cv-498-LRH-GWF on Defendant/Counterclaimant United States' Motion for Protective Order (#32), filed on September 22, 2011; Plaintiff Denko Drywall Company's Response to the Motion for Protective Order (#33), filed on October 6, 2011; and the United States' Reply in Support of its Motion for Protective Order (#35), filed on October 17, 2011.  The Court conducted a combined hearing on these motions on October 24, 2011.

# BACKGROUND

For purposes of the instant motions, the facts in both cases are substantially identical. Plaintiffs Desert Valley Painting & Drywall, Inc. ("Desert Valley") and Denko Drywall Company ("Denko") are Nevada licensed drywall contractors. *Complaints (#1)*, ¶ 5. Plaintiffs allege that they entered into contracts with Centennial Drywall Systems, Inc. ("Centennial" or "CDSI") to provide drywall workers for construction projects in Nevada. The workers provided by CDSI were allegedly retained by it as independent contractors. Desert Valley and Denko paid funds directly to CDSI for the workers' services. Desert Valley and Denko did not make any payments to the individual workers. ¶¶ 6-7. Desert Valley and Denko allege that "CDSI treated its workers as independent contractors pursuant to a worker classification letter from the Internal Revenue Service ('Worker Classification Letter') that had been issued over a decade ago and served as the industry-wide standard for drywall contractors." ¶ 8. Plaintiffs allege that the tax deposits made and payroll amounts reflected on their Form 941 returns did not include amounts paid under the contracts with CDSI because the workers provided pursuant to the contracts were treated by CDSI as independent contractors pursuant to the IRS's Worker Classification Letter. ¶ 9.

Plaintiffs allege that beginning in or about July 2007 the IRS began efforts to reclassify the drywall workers as employees rather than independent contractors. The IRS first attempted to collect employment taxes from CDSI. After that effort was unsuccessful, the IRS allegedly pursued efforts to collect employee taxes from Desert Valley, Denko and other drywall contractors who used CDSI's services. ¶¶ 11-14. On or about June 8, 2009, the IRS sent Plaintiffs "Statements of Adjustment to Account" for the additional taxes and interest allegedly owed for the CDSI drywall workers that the IRS had now reclassified as employees of the Plaintiffs. Desert Valley and Denko made partial payments on the disputed taxes and filed requests for abatement and refunds. After waiting the required six months without a response from the IRS, Plaintiffs filed the instant lawsuits for refunds of the partial payments pursuant to 28 U.S.C. §1346(a) and 26 U.S.C. §7422. ¶¶ 15-18. The United States has filed counterclaims in both actions to recover the full amount of the taxes and interest allegedly owed by Desert Valley and Denko.

. . .

Plaintiffs listed five IRS employee witnesses in their respective Rule 26(a)(1) disclosures who are "expected to testify regarding the worker classification determination and proposed changes to employment tax as to [Plaintiff]." *Motions for Protective Order (#34, #32), pp. 3-4.*[1] The witnesses are identified by their IRS title or position, but not by name. Plaintiffs also list "[a] witness described as an Internal Revenue Service Employment Tax Specialist" who will "testify regarding the Centennial Audits and the basis for the workers classification determinations arising therefrom," and "[a] witness described as an Internal Revenue Service Revenue Officer" who will "testify regarding the taxes assessed pursuant to the worker classification determination and his recommendations regarding those taxes."

The Government contends that Plaintiffs intend to elicit testimony from these IRS employees regarding the impressions and conclusions they formed and reached during the administrative process, and/or the factual and legal analysis they employed in evaluating Plaintiffs' potential liability for the taxes at issue in these actions. *Motion for Protective Order (#34), pp. 2-4.* The Government contends that such testimony is irrelevant and that Plaintiffs should be precluded from deposing the IRS employees or calling them as witnesses at trial regarding such matters.

Plaintiffs also served the following requests for production of documents on the Government:

> **Request No. 11:** Produce all documents prepared by you which refer, reflect or relate to the audit of [Centennial's] 1988 and 1989 employment tax returns and/or on which you relied in reaching the worker classification determination resulting from that audit.
>
> **Request No. 12:** Produce all documents prepared by you which refer, reflect or relate to the audit of [Centennial's] Form 1120 tax return for tax year ending October 31, 1990, and/or on which you relied in reaching the determination resulting from that audit.
>
> **Request No. 13:** Produce all documents prepared by you which refer, reflect or relate to the 1994 worker status determination regarding [Centennial's] worker [Mr. K], and/or on which you relied in reaching the resulting worker classification determination.

---

[1] All combined references to docket numbers list the docket number in Case No. 2:10-cv-490-KJD-GWF first, followed by the corresponding docket number in Case No. 2:10-cv-498-LRH-GWF.

**Request No. 14:** Produce all documents prepared by you which refer, reflect or relate to the audit of [Centennial's] 2004 and 2005 employment tax returns and/or on which you relied in reaching any worker classification determination resulting from that audit.

The Government objected to these requests on the grounds that the requested information is irrelevant and that information relating to CDSI is protected from disclosure by 26 U.S.C. §6103.

The Government also objects to Plaintiffs' Request No. 16 which states as follows:

**Request No. 16:** Produce all documents which refer, reflect or relate to communications, whether written or oral, made by [Centennial's] or any of its directors, officers, employees, agents, attorneys, accountants, or anyone else holding him or herself out as an authorized representative of Centennial, that would support that workers provided under the Plaintiff's contract with Centennial were employees of Plaintiff, that Plaintiff/Counterdefendant was responsible for collecting, withholding, and paying over of payroll taxes for those workers, or that Plaintiff knew or should have known that the workers were employees of Plaintiff and that Plaintiff was responsible for collecting, withholding, and paying over of payroll taxes for those workers.

The Government responded to Request No. 16 by stating that it has disclosed witnesses and documents collected in connection with the audit of Plaintiffs' 2004, 2005 and/or 2006 employment tax returns which it may use to support its claims or defenses pursuant to Rule 26 and the Court's instructions. The Government objected to this request on the grounds that the documents are protected from disclosure by 26 U.S.C. §6103.

The Government also objects to Plaintiffs' Interrogatory No. 7 which states as follows:

**Interrogatory No. 7:** State the principal facts upon which you relied to deny the allegation contained in paragraph 11 of Plaintiff's complaint that "the Internal Revenue Service attempted to collect payroll taxes from [Centennial] but was unsuccessful." To the extent that your denial was based on a lack of knowledge or information, identify the nature of the documentation and/or information you need to be able to affirmatively admit or deny those allegations, and what efforts have been made to obtain said information and/or documentation.

The Government responded to this interrogatory by stating that it did not deny the allegations contained in paragraph 11 of Plaintiffs' complaints, but rather stated that it lacked knowledge or information sufficient to form a belief as to the truth of those allegations. The Government also objected to Interrogatory No. 7 on grounds that the information regarding Centennial is protected from disclosure by 26 U.S.C. § 6103.

. . .

4

**DISCUSSION**

The Government seeks a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure against being required to respond to discovery into the analysis, impressions or conclusions reached by IRS employees or officers during the administrative process regarding the Plaintiffs' potential liability for the employment taxes at issue. The Government argues that such information is irrelevant to the claims and defenses in this case. In support of this assertion, the Government relies on *R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2nd Cir. 1991) and other cases regarding the standard which governs the district court's determination in a tax refund action. *Dietz* states in this regard:

> Ordinarily, in an action brought pursuant to 28 U.S.C. § 1346(a)(1) for a refund of taxes already paid to the government, the district court is required to redetermine the entire tax liability. *Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932). The factual and legal analysis employed by the Commissioner is of no consequence to the district court. *National Right to Work Legal Def. & Educ. Found. v. United States,* 487 F.Supp. 801, 805 (E.D.N.C.1979); *see also Ruth v. United States,* 823 F.2d 1091, 1094 (7th Cir.1987) ("courts will not look behind an assessment to evaluate the procedure and evidence used in making the assessment."); *Kentucky Trust Co. v. Glenn,* 217 F.2d 462, 465-66 (6th Cir.1954). "[T]he court does not sit in judgment of the Commissioner; the court places itself in the shoes of the Commissioner." *National Right to Work,* 487 F.Supp. at 805. Thus, a *de novo* review of the determination and assessment should be conducted. *Ruth,* 823 F.2d at 1094.

Based on this *de novo* review standard, trial courts have prohibited or restricted discovery regarding the IRS's administrative determinations of the tax liability on the grounds that it is irrelevant, except in those cases in which the IRS Commissioner is vested with some discretion in the imposition of a tax. *See Vons Companies, Inc. v. United States*, 51 Fed.Cl. 1, 6 (2001); *McLeod v. United States*, 2000 WL 1902257 *2 (D.Nev. 2000) and *Xcel Energy, Inc. v. United States*, 237 F.R.D. 416 (D.Minn. 2006).

In *Xcel Energy, Inc. v. United States*, the government disallowed certain corporate interest deductions on life insurance policies that the plaintiff had purchased on behalf of its employees. The plaintiff requested production of documents relating to the government's decision to disallow the deduction. The government produced most of the requested documents, but redacted those

portions of the documents that contained the analysis and opinions of the IRS personnel based on lack of relevancy and the deliberative process privilege. In holding that the redacted portions were irrelevant, the court relied on *Mayes v. United States*, 1986 WL 10093 (W.D.Mo. 1986) in which the plaintiff sought to discover an internal agency memorandum prepared by an IRS agent during the administrative appeal of the plaintiff's claim. After noting the *de novo* standard to be applied, the *Mayes* court stated:

> . . . The court will not be reviewing the analysis followed by the IRS employee or the reasons why the IRS made the assessment. As the cases cited earlier indicate, it will be of no moment whether the IRS employee was correct or not in his interpretation of the law at the administrative stage. The court's determination of plaintiff's correct tax liability will be made by examining the deduction in question in light of the underlying facts and the applicable law. Given these circumstances, the court concludes that the portion of the supporting statement comprising the IRS employee's legal analysis is not relevant to any of the issues herein and is thus outside the scope of discovery.

*Xcel Energy*, 237 F.R.D. at 419, quoting *Mayes*, 1986 WL 10093 at *2-3.

The plaintiff in *Xcel Energy* argued, however, that the internal memoranda of the IRS agents were relevant because the Internal Revenue Code provides an exception to the imposition of penalties if there is "substantial authority" for the taxpayer's position. *Id.*, 237 F.R.D. at 419, citing 26 U.S.C. § 6662(d)(2)(B)(I) and Treasury Regulation §1.6620-4(d)(2). In rejecting the argument that the memoranda were relevant on this basis, the court stated that it had "found no authority for the proposition that the internal ruminations of IRS agents, during an administrative consideration of the taxpayer's tax liability, could serve, however slightly, as the "substantial authority" required by Section 6662(d)(2)(B)(I), and Xcel has drawn none to our attention." *Id.*

There are, however, contexts in which such information may be relevant and discoverable. In *United States v. Cathcart*, 2009 WL 482220, *3-4 (N.D.Cal. 2009), the government sought the imposition of a penalty against the defendant based on the allegation that he participated in a "90% stock loan program" which constituted an abusive tax shelter or tax fraud scheme. The government was required to prove that defendant knew or should have known that the program was fraudulent. The defendant sought to discover whether the IRS had concluded, in prior audits of other taxpayers, that the same loan program was not an abusive tax shelter. In holding that defendant was entitled

to some discovery on this issue, the court stated: "If the IRS concluded that the program was legitimate when it audited borrowers, that may tend to show that a reasonable person in defendant's position would believe that the program was not an abusive tax shelter." *Id.* at *5.

As a general rule, a taxpayer's reliance on an erroneous IRS administrative ruling is no defense to the payment of a lawful tax. *See Vons Companies, Inc. v. United States*, 51 Fed.Cl. 1, 6-7 (2001), citing *Dixon v. United States*, 381 U.S. 68, 72-73, 85 S.Ct. 1301 (1965). The "safe haven" provision of §530 of the Revenue Act of 1978, however, provides an exception to this rule as it relates to the employment status of individuals for whom employment taxes may be owed.

Section 530(a)(1) states as follows:

> If –
> (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and
>
> (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,
>
> then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

Section 530(a)(2) sets forth statutory standards "providing one method of satisfying the requirements of paragraph (1)." It states:

> For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:
>
> (A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;
>
> (B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or
>
> (C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

1        Section 530 "was designed to relieve employers of the burden of surprise or uncertain
2 imposition of retroactive tax liability resulting from an increase in IRS employment-status audits."
3 *General Investment Corp. v. United States*, 823 F.2d 337, 339 (9th Cir. 1987).[2]  The statute is to be
4 liberally construed in favor of the taxpayer, although the taxpayer has the burden of establishing
5 that he meets the requirements of §530 by a preponderance of the evidence. *Springfield v. United*
6 *States*, 88 F.3d 750, 753 (9th Cir. 1996). In addition to the matters listed in §530(a)(2)(A),(B) and
7 (C), "a taxpayer may demonstrate any other reasonable basis for the treatment of an employee for
8 tax purposes." *Id*. *See also General Investment Corp.*, 823 F.2d at 340 ("Section 530(a)(2)(C) is
9 but one way for an employer to prove it had a 'reasonable basis' for not treating its workers as
10 employees for tax purposes.").
11        In support of the relevancy of their discovery requests, Plaintiffs state that "to demonstrate,
12 in part, [their] entitlement to relief under Section 530 [Plaintiffs] will present evidence that there
13 was a recognized industry practice wherein *Centennial's workers were independent contractors*
14 and the status of Centennial's workers as independent contractors was *accepted by the IRS* (as well
15 as being an accepted practice in the local drywall industry). [Plaintiffs] appropriately believed
16 [they] did not have to pay taxes for Centennial's workers since no other subcontractor was."
17 *Responses to Motion for Protective Order (#35) p 14; (#33), pp. 13-14*.
18        Subsection 530(a)(2)(C) requires the taxpayer to prove two elements.  First, the taxpayer
19 must prove that there was, in fact, a long-standing recognized practice in a significant segment of

---

21    [2] As stated in *Springfield v. United States*, 88 F.3d 750, 751 n. 2 (9th Cir. 1996):

23    Section 530 of the Revenue Act of 1978, Pub.L. No. 95-600, 92 Stat.
      2763, 2885-86, was originally intended to provide interim relief for
24    taxpayers who were involved in employment tax controversies with
      the IRS, and it therefore initially applied only to periods prior to
25    January 1, 1980. H.R.Rep. No. 1748, 95th Cong., 2d Sess. 4 (1978),
      *reprinted in* 1978-3 C.B. 629, 632. It was temporarily extended twice
26    and then extended indefinitely by Section 269 of the Tax Equity and
      Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97-248, 96
27    Stat. 324, 552. Section 530 was never codified, but it is reproduced in
28    the notes following I.R.C. § 3401 [26 U.S.C.§ 3401].

the industry.  Second, the taxpayer must prove that he relied on this practice in the tax treatment of his or her workers.  The court in *General Investment Corp.* held that the plaintiff satisfied its burden by presenting testimony by its principal officer and another mine operator that mining companies in the county treated their mine workers as independent contractors. 823 F.2d at 340-41 In *Springfield*, the plaintiff met his burden by presenting undisputed testimony by himself and by salesmen that independent used car dealers in the county treated their salesmen as independent contractors. 88 F.3d at 753-54.  *See also 303 West 42nd St. Enterprises, Inv. v. Internal Revenue Services*, 181 F.3d 272, 277 (2nd Cir. 1999) (holding that taxpayer's survey of its particular industry regarding the tax treatment of the same type of worker may be sufficient to establish the practice of a significant segment of the industry).  Statements made by IRS officers or employees to business operators/taxpayers recognizing the existence of the practice in the industry are also relevant and may be admissible to prove the existence of the practice.  The Government is therefore not entitled to a protective order in regard to discovery of any such statements.

The taxpayer can also establish reasonable reliance based on judicial precedent, published rulings, technical advice with respect to the taxpayer, a letter ruling to the taxpayer or a past IRS audit that resulted in a finding or inference that similarly situated workers were not employees for tax purposes. §530(a)(2)(A) and (B).

The IRS apparently did not issue any technical advice memoranda or private letter rulings to Desert Valley or Denko stating that it was proper for them to treat the drywall workers as independent contractors.  Nor did the IRS conduct any prior audits of Desert Valley or Denko relating to the tax treatment of such workers.  Plaintiffs allege, however, that they relied on representations made to them by CDSI that the IRS had approved CDSI's treatment of the drywall workers as independent contractors and that it was proper for the Plaintiffs to also treat such workers as independent contractors so long as the same conditions relating to control over the workers were present.  In support of this argument, Plaintiffs cite a September 6, 1989 letter that an IRS officer sent to the president of CDSI, which stated as follows:

> Per our discussion relating to the employment tax examination just completed, as long as the same independent contractor conditions exist, there is no employment tax issue.

> The independent subing to you is:
>
>> at risk (can lose cash out of pocket on a particular job), completing work on a per job basis rather than by the hour, not required by you to perform personally, and control of work rests with sub (outside general requirements)
>
> I would like you to pass on some information to your subs if you would be so kind. If the so called subs to your subs are not operating under the same conditions as I mentioned briefly above, those workers are employees and your subs are employers subject to employment taxes.

*Responses to Motion for Protective Order (#35), (#33), Exhibit 1.*

Plaintiffs also cited a purported January 4, 2007 letter from an IRS Revenue Office Examiner.[3] The document concerns an examination as to whether a corporate vice-president of CDSI, who consulted on real estate development matters, was an independent contractor. Although the document does not directly concern the employment status of drywall workers, item 10 at the bottom of the page states:

> Due to a previous employment tax examination, the taxpayer is afforded a Section 530 safe harbor for the dry-waller class of employee. The taxpayer has never been examined for independent real estate development class of worker.

Plaintiffs argue that this document confirms that as recently as the end of 2006, the IRS recognized CDSI's right, pursuant to §530, to treat the drywall workers as independent contractors.

Section 530(a)(2) does not provide any express authority for a taxpayer to rely on IRS technical memoranda or private letter rulings issued to other taxpayers. In this case, however, the Plaintiffs contracted with CDSI to provide drywall workers for their construction projects and allegedly relied on its representations that the IRS had approved or confirmed the independent contractor status of the workers. The Court could therefore find, pursuant to §530, that it was reasonable for Plaintiffs to rely on CDSI's representations so long as CDSI had a reasonable basis for making such representations. Technical advice memoranda or private letter rulings issued to

---

[3] Nothing on the face of the document confirms that it was a letter from an IRS officer. The Government, however, has not disputed Plaintiffs' representation regarding the exhibit.

CDSI which approved or confirmed the independent contractor status of the workers would provide evidence supporting the reasonableness of CDSI's belief and representations. Likewise, prior IRS audits of CDSI which resulted in no assessments being made based on a finding that the workers were employees could also support the reasonableness of CDSI's belief and representations. Discovery regarding such matters is therefore relevant. On the other hand, the internal memoranda of IRS agents containing their analysis regarding the employment status of the drywall workers is irrelevant so long as the memoranda and/or their contents were not disclosed to CDSI or Plaintiffs. If the memoranda discuss communications between the IRS and CDSI (or Plaintiffs) regarding the employment status of the workers, however, information regarding such communications are relevant and discoverable.

The Government also argues that pursuant to 26 U.S.C. §6103(a) it is prohibited from disclosing any return or return information concerning a non-party taxpayer, in this case CDSI. As the Government notes, however, §6103 contains several exceptions, including an exception which permits disclosure to a person authorized by the taxpayer to receive such information. CDSI is a defunct corporation. Plaintiffs have attached to their response an authorization by CDSI's former president, Edwin Braithwaite, authorizing the release of return information to Plaintiffs for purposes of this lawsuit. The Government appears to accept, or at least does not strenuously dispute, the validity of this authorization pursuant to 26 U.S.C. §6103(e)(1)(D). Section 6103(h)(4)(C) also provides that return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer, and which directly affects the resolution of an issue in the proceeding. In this case, return information relating to the employment tax treatment of CDSI's drywall workers appears to directly relate to the tax treatment of those workers by Plaintiffs arising out of the contractual relationship between CDSI and Plaintiffs. It therefore also directly relates to the resolution of the tax issue in this case. Section 6103(a) therefore does not preclude the discovery of relevant return information relating to the tax treatment of CDSI's drywall workers.

. . .

**CONCLUSION**

Based on the foregoing, the Court concludes that discovery into the internal analysis, impressions or conclusions of IRS employees or officers relating to Plaintiffs' or CDSI's potential liability for the employment taxes at issue is irrelevant. The Government is therefore entitled to a protective order against Plaintiffs' efforts to discover such information, whether it be through depositions of IRS personnel, interrogatories or requests for production. Plaintiffs are not precluded, however, from discovering statements made by the IRS to CDSI and/or Plaintiffs regarding the employment status of the drywall workers, regardless of whether such statements were made in the form of technical advice memoranda, private letter rulings or other forms of communication. Plaintiffs are also not precluded from discovering relevant information regarding prior IRS audits of CDSI which resulted in determinations relevant to the drywall workers' status as independent contractors or employees, and upon which CDSI may have relied in allegedly representing to Plaintiffs that the workers were independent contractors. Accordingly,

**IT IS HEREBY ORDERED** that Defendant/Counterclaimant United States' Motion for Protective Order (#34), in Case No. 2:10-cv-490-KJD-GWF and Motion for Protective Order (#32) in Case No. 2:10-cv-498-LRH-GWF are **granted** in accordance with and subject to the limitations set forth in this order.

DATED this 3rd day of November, 2011.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge